IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:23-cv-00085-M-RN

JOE HAND PROMOTIONS, INC.,

    Plaintiff,

v.

MS MANAGEMENT LLC, LARRY D. BARKSDALE, and MARCUS A. SMITH,

    Defendants.

ORDER

Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") brings this civil action against Defendants MS Management LLC, Larry D. Barksdale, and Marcus A. Smith (collectively, "Defendants"), alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. [DE 1]. Pending before the court is Plaintiff's Motion for Default Judgment. [DE 20]. For the following reasons, the motion is GRANTED, and the court AWARDS damages in the amount of $6,000, as well as attorneys' fees and costs, for a total award of $8,045.70.

I. **Background**

Joe Hand is a corporation that licenses and distributes sports and entertainment programing to commercial establishments in the United States. [DE 1 at 3]. By written agreement, Joe Hand purchased the exclusive distribution rights to the broadcast of *Deontay Wilder vs. Tyson Fury II* on February 22, 2020 ("the Event"). [DE 22-2]. The program originated via satellite uplink and was retransmitted to cable systems and satellite companies through an encrypted signal. [DE 1 at 3]. Joe Hand entered into agreements with numerous commercial establishments in the State of North Carolina, permitting them to access and broadcast the Event in exchange for a fee. *Id.* On

February 22, 2020, Defendants purportedly televised the Event without contracting with Joe Hand or paying the licensing fee.

On February 21, 2023, Joe Hand filed the instant lawsuit against Defendants, alleging that they unlawfully intercepted and intentionally broadcasted the Event at Pier 34 Seafood & Pub. *Id.* To date, Defendants have not filed an answer or otherwise appeared before the court. Accordingly, the court entered default as to Defendants Marcus A. Smith and Larry D. Barksdale on July 28, 2023, and as to MS Management LLC on November 27, 2023. [DE 12, 19]. Joe Hand now moves for Default Judgment and pursuant to 47 U.S.C. § 605 requests $8,000 in damages, $1,500 in attorneys' fees, and $545.70 in costs. [DE 20–21].

## II. Discussion

When default has been entered and the amount of damages is not readily ascertainable, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012). The Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equp. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *Choice Hotels Intern., Inc. v. Savannah Shakti Corp.*, No. DKC-11-0438, 2011 WL 5118328, at *2 (D. Md. Oct. 25, 2011).

When considering a motion for default judgment, well-pleaded allegations in a complaint are sufficient to establish liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). If liability is established, the court must then determine the appropriate amount of damages. *Id.* Any allegation regarding the amount of damages is not controlling, so the court

2

"may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum." *J & J Sports Productions, Inc. v. Romenski*, 845 F. Supp. 2d 703, 706 (W.D.N.C. 2012) (citing *Ryan*, 253 F.3d at 780).

### A. Liability

The well-pleaded allegations of the complaint, which Defendants admit to by their default, establish liability for conduct that violates 47 U.S.C. § 605. Section 605 "prohibits unauthorized individuals from intercepting radio communication and divulging or publishing the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." *J & J Sports Productions, Inc. v. Segura*, No. 5:12-CV-241, 2013 WL 1498963, at *2 (E.D.N.C. April 10, 2023) (citing 47 U.S.C. § 605). This includes "the unauthorized interception and broadcast of satellite transmissions." *Id.* (cleaned up). Here, Joe Hand had the exclusive distribution rights for the Event on February 22, 2020, and Defendants, without authorization, intercepted the transmission of the Event and thereafter broadcasted it to their patrons at Pier 34 Seafood & Pub. [DE 1 at 3–4]. Joe Hand submits an affidavit from its auditor, David L. Roebuck, that alleges that Mr. Roebuck visited the establishment on February 22, 2020, paid a $5 cover charge, and observed the Event being broadcast on three televisions to fifteen (15) patrons. [DE 21-4].

These allegations are sufficient to establish liability both against Defendant MS Management LLC and the individually named defendants, whom the complaint alleges were "an officer, director, shareholder, member and/or principal of the entity owning and operating" Pier 34 Seafood & Pub, with the "right and ability to supervise the activities of the Establishment [and whom] had an obvious and direct financial interest in the activities of the Establishment." [DE 1]; *see also Joe Hand Promotions, Inc. v. Mehovic*, No. 1:12-CV-267, 2013 WL 3155355, at *4

3

(W.D.N.C. June 20, 2013) ("An individual defendant may be held liable pursuant to Section 553 and Section 605 where the individual has the right and ability to supervise the violations and a strong financial interest in the activity.") (cleaned up).

### B.     Damages

The court considers Joe Hand's request for damages. Under Section 605, an aggrieved plaintiff may recover actual damages or statutory damages for each violation "in a sum of not less than $1,000 or more than $10,000." 47 U.S.C. §§ 605(e)(3)(C)(i).

Here, Joe Hand seeks statutory damages in the amount of $2,000. In support of this request, Joe Hand submits an affidavit from its president, Joseph P. Hand, III, and the rate card for the Event, both of which advise that the commercial licensing fee for an establishment this size was $1,450. [DE 21-1, at 2–3; DE 21-3]. Joe Hand argues that the awarded damages should reflect both this fee and the erosion to its customer base, which "cannot compete with the unfair and illegal competitive advantage that unauthorized establishments, like the Defendants', unlawfully enjoy." [DE 21 at 7]. Joe Hand also cites a loss of goodwill and reputation, arguing that the violation harmed its ability to negotiate licensing agreements with the owners of these types of broadcasts. *Id.* at 7–8.

To ensure that the statutory damages reflect "the amount [Joe Hand] is out-of-pocket," the court begins with the commercial licensing fee. *Joe Hand Promotions, Inc. v. Luz, LLC*, No. 18-3501, 2020 WL 374463, at *2 (D. Md. January 23, 2020). The information provided by Joe Hand advises that to lawfully access and stream the Event, Defendants would have had to pay $1,450. [DE 21-3]. This money would have been paid to Joe Hand but for the violation, so the court finds that it appropriately serves as a baseline for a damages calculation. The court finds that an additional award of $550 is warranted based on the earning loss caused by the violation and the

expenses incurred to send an auditor to Pier 34 Seafood & Pub. While the extent of Joe Hand's earning loss is uncertain, particularly in light of Defendants' nonparticipation in discovery, the court finds this modest increase in damages does not overstate the harm suffered. The court will therefore award statutory damages in the amount of $2,000.

The Communications Act also allows for enhanced damages. If the court finds that the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court, in its discretion, may increase the award of damages by no more than $100,000. § 605(e)(3)(C)(ii). When determining whether to award enhanced damages, courts in the Fourth Circuit consider,

> whether (1) the defendants advertised the fight or otherwise displayed it to entice patrons, (2) the defendants imposed an admission or cover charge, (3) there is a history of repeated violations, (4) there were a large number of patrons to show whether the violation was a large one or a small one and (5) other similar factors.

*Joe Hand Promotions, Inc. v. Uptown Prods., LLC*, No. 1:18-CV-537, 2020 WL 9848456, at *2 (M.D.N.C. April 15, 2020) (cleaned up). Courts have frequently "looked to the statutory damages award as a baseline for determining enhanced damages, multiplying that baseline sum by some number based on the egregiousness of a defendant's conduct." *Id.* at 3 (awarding enhanced damages three times the size of statutory damages to "deter such willful activity"); *see also Luz*, 2020 WL 374463, at *3 (finding that when no admission fee was charged, judges have "typically multiplied the statutory damages by a factor of three to determine enhanced damages") (cleaned up).

The court finds that enhanced damages are appropriate. As has been recognized by other courts, "signals do not descramble spontaneously, nor do televisions sets connect themselves to cable distribution systems." *Luz*, 2020 WL 374463, at *2. Joe Hand advises that, to its knowledge, the Event could not be "mistakenly, innocently, or accidently intercepted." [DE 21-1].

5

Defendants, by virtue of their default, offer no contradicting theory, so this court finds that the present violation was committed willfully. Further, the cover charge imposed on the night of the violation and the Facebook post advertising the Event suggest that the violation was committed for direct financial gain. *See* [DE 21-1; DE 21-4]. Therefore, enhanced damages pursuant to § 605(e)(3)(C)(ii) are available.

While enhanced damages are appropriate, the court finds that a $6,000 increase in the award would be excessive. In a facility that can accommodate 100 people, the Event was only viewed by fifteen patrons. [DE 21-4]. Further, there was only a modest $5 cover charge, and there is no evidence of repeated violations. *Id.* The court finds that an enhancement of twice the statutory damages in the amount of $4,000 more appropriately reflects the individual facts of this case.

Lastly, Joe Hand seeks attorney's fees and costs associated with the instant action. Section 605 provides that upon finding a violation, the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees." § 605(e)(3)(B)(iii). For good cause shown, this request is granted, and the court awards to Joe Hand attorneys' fees in the amount of $1,500 and costs in the amount of $545.70.

### III. Conclusion

For the foregoing reasons, Joe Hand's Motion for Default Judgment is GRANTED. [DE 20]. The Clerk is DIRECTED to enter a judgment against Defendants, jointly and severally, in the amount of $8,045.70, which includes $6,000 in statutory damages, $1,500 in attorneys' fees,

6

and $545.70 in costs.

SO ORDERED this __12th__ day of December, 2024.

_Richard E Myers II_
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

7